*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. CONTRERAS, Minor.

UNPUBLISHED
January 11, 2024

No. 366868
Lenawee Circuit Court
Family Division
LC No. 22-000054-NA

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to the minor child, EC. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This child protective proceeding was initiated after EC was removed from her mother's custody at birth.[1] The child was experiencing withdrawals systems because of the mother's use of opiates during her pregnancy. The mother and respondent, who was the child's putative father at the time, were both using drugs near the time of the child's birth. Respondent's paternity was established approximately five months later, at which time he became a respondent in these proceedings. By that time, EC had been placed with a maternal aunt and respondent was in prison.

Respondent was incarcerated approximately three months after the child's birth and was later sentenced to 3-1/2 to 20 years in prison for first-degree home invasion. The trial court acquired temporary jurisdiction and ordered services for respondent. Approximately one year after the child's birth, petitioner filed a supplemental petition seeking termination of respondent's parental rights. Following a hearing on the supplemental petition, the trial court found that statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(h) and (j), and further found that termination of respondent's parental rights was in the child's best interests. This appeal followed.

---

[1] The child's mother voluntarily released her parental rights to the child and is not a party to this appeal.

-1-

## II. REUNIFICATION EFFORTS

Respondent first argues that the trial court committed plain error affecting his substantial rights by finding that petitioner, the Department of Health and Human Services, made reasonable efforts toward reunification and thus, termination of his parental rights was premature. We disagree.

### A. STANDARD OF REVIEW

Because respondent did not raise the issue of reunification in the trial court, it is unpreserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014); *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (holding that a respondent must object when services are offered). Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). "To avoid forfeiture under the plain-error rule, the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights." *Id*.

### B. ANALYSIS

"Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. Whether reasonable services were offered relates to the sufficiency of the evidence for termination of parental rights. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "While [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. To prove a claim of lack of reasonable efforts, a respondent must show that he or she would have fared better had petitioner offered other services. See *In re Fried*, 266 Mich App at 543.

Respondent relies on *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010), in support of his claim that he was not offered a meaningful opportunity to participate in his case service plan. In *Mason*, the Michigan Supreme Court concluded that the respondent, who was incarcerated, had been denied a meaningful and adequate opportunity to participate and, thus, termination was premature. *Id*. at 152. The respondent was not afforded the opportunity to participate in several proceedings. *Id*. at 152-155. Regarding a case service plan, it was not clear whether it was sent to the respondent, and the court and workers never facilitated access to services or discussed updating the plan, did not comply with policy, and gave the respondent no opportunity to comply. *Id*. at 156-160. The Court concluded that the trial court had essentially terminated the respondent's parental rights solely on the basis of his incarceration, without properly considering the respondent's future ability to care for the children, particularly where he did engage in services in prison that amounted to compliance with the case service plan. *Id*. at 160-163. The trial court also failed to consider whether the respondent could fulfill his duty to provide proper care and custody in the future by voluntarily granting legal custody to his relatives. *Id*. at 163. The children had already been placed with the respondent's relatives. *Id*. at 163-164.

Unlike *Mason*, respondent was not denied the opportunity to participate in any hearings and he was offered a case service plan. Although he did not sign it, the foster care case manager met with respondent to discuss services, and the case service plan was discussed on the record. Thus, respondent

fails to establish error in this regard. Further, respondent's case manager, Aleeya Freeman, contacted the prison to determine what services were available. The trial court found that Freeman satisfied her obligations regarding incarcerated parents by sending information to respondent and inquiring with the prison about services. Although the prison did not offer the services respondent needed, he was sent parenting workbooks. See *In re Dixon (On Reconsideration)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363388); slip op at 12 (stating that, "[a]t the very least," an incarcerated parent should be provided with workbooks to complete). Further, at the time of disposition, it was reported that respondent read, but did not complete, the parenting education materials, and there is no indication that he did so afterward. The fact that respondent did not complete the services that were available to him tends to show that he would not have fared better had additional services been offered. See *In re Fried*, 266 Mich App at 543. Moreover, unlike in *Mason*, respondent did not complete any services on his own.

Respondent briefly argues that the trial court and petitioner never discussed updating the plan. See MCL712A.18f(5) (requiring the case service plan to be updated and revised at 90-day intervals). At the February 21, 2023 hearing, approximately 90 days after the initial disposition, Freeman reported that she had looked into services at respondent's current location and there were not many services available. At that time, the permanency goal was changed to adoption, and the termination hearing was held in May 2023. Thus, respondent fails to establish that any error in failing to update the case service plan affected his substantial rights.

Respondent also argues that Freeman's statements suggest that petitioner never sought reunification. In the court report for the November 28, 2022 hearing, Freeman recommended that the goal be changed to adoption and respondent's parental rights be terminated because he would be incarcerated for a minimum of three years. Despite her belief that adoption and termination *should* be the goal, Freeman acknowledged in the report that the current permanency plan was reunification and listed the reunification efforts that had been made. Thus, her statements do not establish that petitioner never sought reunification.

Finally, respondent suggests that he was improperly denied visitation with the child, relying on this Court' recent decision in *Dixon (On Reconsideration)*, ___ Mich App at ___; slip op at 11, in which this Court explained:

> [T]he lack of parent-child contact in this case violates the Juvenile Code. MCL 712A.13a(13) and MCL 712A.18f(3)(c) require the court to permit "regular and frequent parenting time" when a child is removed from a parent's care. The court recognized this duty and ordered the DHHS to arrange video visits for the incarcerated father and his young son. As of December 2022, those visits still were not occurring, contrary to court order. If these visits still have not been scheduled, that must be rectified immediately. This may require a court order directly to the prison.

MCL 712A.13a(13) provides:

> If a juvenile is removed from the parent's custody at any time, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile. Parenting time between the juvenile and his or her parent must not be less than 1 time every 7 days unless the court determines either that exigent circumstances require less frequent parenting time or that parenting time, even if supervised, may be harmful to the juvenile's

life, physical health, or mental well-being. If the court determines that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being, the court may suspend parenting time until the risk of harm no longer exists. The court may order the juvenile to have a psychological evaluation or counseling, or both, to determine the appropriateness and the conditions of parenting time.

In this case, the trial court found in the order of disposition that visitation, even if supervised, may be harmful to the child. Thus, the trial court could suspend parenting time. Respondent never objected to that finding and does not dispute that finding on appeal. Moreover, respondent did not request parenting time at the time of his adjudication or before becoming incarcerated. Freeman testified at the initial disposition that virtual visits could be set up, but observed that "given [the child] is only eight months, there would be a problem there." Respondent never objected to this testimony or otherwise sought parenting time. Under these circumstances, respondent fails to establish any plain error affecting his substantial rights.

## III. STATUTORY GROUNDS FOR TERMINATION

Next, respondent argues that the trial court erred when finding there were statutory grounds for termination of his parental rights. We disagree.

### A. STANDARD OF REVIEW

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted).

### B. ANALYSIS

The trial court terminated respondent's parental rights to EC under MCL 712A.19b(3)(h), which provides for termination when:

> The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

Concerning MCL 712A.19b(3)(h), respondent argues that the trial court erred by terminating his parental rights because he had a willing and able relative to care for the child during his incarceration. In *Mason*, 486 Mich at 160, the Court explained that "MCL 712A.19b(3)(h) authorizes termination only if *each* of three conditions is met[.]"

The combination of the first two criteria—that a parent's imprisonment deprives a child of a normal home for more than two years and the parent has not provided for proper care and custody—permits a parent to provide for a child's care and custody *although the parent is in prison*; he need not *personally* care for the child. The third necessary condition is forward-looking; it asks whether a parent "will be able to" provide proper care and custody within a reasonable time. Thus, a parent's past failure to provide care because of his incarceration also is not decisive. [*Id*. at 161.]

Respondent argues that the elements of MCL 712A.19b(3)(h) were not satisfied because he offered his sister for placement and there was no evidence that she was unfit. Preliminarily, there is no dispute that respondent would be incarcerated for at least three years. His earliest release date is November 16, 2025.

With respect to the second element, respondent argues that he could provide proper care or custody through his sister. However, the child was not placed with respondent's sister. This case is unlike *Mason*, 486 Mich at 163-164, in which the respondent's children were already placed with the respondent's family and, thus, the respondent was not required to do more. In this case, when respondent offered his sister for placement, the child had already been placed with the maternal aunt, who was meeting the child's needs.

The trial court stated that respondent should have directed placement of the child before his incarceration and noted that respondent's sister could file a competing petition for adoption if respondent's parental rights were terminated. It is not clear that respondent could have directed placement before his incarceration in June 2022 because he had not yet established paternity. This Court has stated that a parent has a constitutional right to direct the care and custody of his or her child before being adjudicated. See *Dixon (On Reconsideration)*, ___ Mich App at ___; slip op at 10 (stating that the father enjoyed a constitutional right to direct the care and custody of the child before he was adjudicated). In this case, however, respondent's paternity was established on the same day that he was adjudicated in November 2022. Thus, he did not have an opportunity to direct the care and custody of the child as an unadjudicated parent.

Nevertheless, respondent fails to establish that there was any error in the trial court's procedure. Respondent's sister was investigated for placement, but no motion to change the child's placement was ever filed. See *Dixon (On Reconsideration)*, ___ Mich App at ___; slip op at 9 (stating that, once a child is placed, a court must review the placement order on motion of a party). Respondent never objected when the court repeatedly stated that, upon termination, respondent's sister could file a competing petition for adoption. Thus, although respondent had a willing relative, the trial court did not err by finding that respondent had not provided for the child's care and custody during his incarceration.

Finally, the trial court found that respondent would not be able to provide proper care or custody of the child within a reasonable time given the barriers he would have to rectify upon his release from prison. Respondent does not address this finding outside of arguing that the child should have been placed with his sister. Given respondent's incarceration and unrectified issues, and that the child was not placed

-5-

with respondent's sister, the trial court did not err by finding that this element was established. Thus, the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(h).[2]

## IV. BEST INTERESTS

Lastly, respondent argues that termination of his parental rights was not in EC's best interests. We disagree.

## A. STANDARD OF REVIEW

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713; see also MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713. "A trial court's decision is clearly erroneous [i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks and citation omitted).

## B. ANALYSIS

"The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. The trial court "should consider a wide variety of factors," including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality," "the advantages of a foster home over the parent's home[,]" "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 713-714 (quotation marks and citations omitted). "A child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re Atchley*, 341 Mich App at 347 (quotation marks and citations omitted).

Regarding the child's best interests, the trial court adopted the arguments of the child's lawyer-guardian ad litem and additionally found that the child's foster home was meeting her needs and providing stability and permanency. Respondent was not able to provide housing, which weighed in favor of the relative placement. Although the placement was not respondent's relative, it was a relative of the child and that relative was willing to have a relationship with respondent's sister. Yet respondent had not taken advantage of that to have an opportunity to have a relationship with the child. Nor did he grant a power of attorney or guardianship. The child had been in care for nearly her entire life, and it was in her best

---

[2] We note that only one ground need be established; thus, we need not consider whether the trial court properly terminated respondent's rights under other statutory sections. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

interests to remain there where she would likely be adopted. The child did not have a relationship with respondent because he was absent and incarcerated. The trial court concluded that termination of respondent's parental rights was in the child's best interests.

First, although respondent argues that the lack of bond was the result of the trial court's improper denial of visitation, as discussed earlier, respondent did not request visitation while incarcerated. Further, he never sought to visit or establish a bond with the child before his incarceration. Thus, the trial court did not err by weighing the lack of a bond in favor of termination.

Next, respondent argues that his sister was able to provide permanency. But the child was not placed with respondent's sister and the maternal aunt, with whom the child was placed, was providing permanency. Thus, this factor also weighed in favor of termination. Respondent also argues that termination was not in the child's best interests because he was not given a meaningful opportunity to participate in a case service plan. We reject this argument for the reasons previously discussed and, moreover, the focus is on the child at this stage. See *In re Atchley*, 341 Mich App at 346.

Finally, respondent argues that the trial court did not properly consider relative placement as a factor that weighs against termination and refused to acknowledge that respondent had a relative who was willing and able to care for the child. The court properly considered that the child was placed with the maternal aunt and found that termination was in the child's best interests despite her placement with a relative. The evidence further established that respondent was not involved with the child before his incarceration, did not complete services to show parenting ability, had unresolved substance-abuse issues, and would be in prison for at least three years. The child was doing well in care and the maternal aunt was willing to adopt her. Thus, the trial court did not err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood